# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MICHAEL VINING, | : | |
| Plaintiff, | : | Civil Action No. |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COUNTY OF BURLINGTON, | : | |
| OFFICE OF THE BURLINGTON COUNTY | : | |
| SHERIFF, JAMES H. KOSTOPLIS, | : | |
| SHERIFF OF | : | |
| BURLINGTON COUNTY, individually | : | |
| and in his official capacity | : | |
| | : | |
| Defendants. | : | **COMPLAINT AND DEMAND FOR** |
| | : | **TRIAL BY JURY** |
| | : | |
| | : | |
| | : | |

minimalKatherine D. Hartman, Esquire (ID No.: 8357)
ATTORNEYS HARTMAN, CHARTERED
68 East Main Street
Moorestown, NJ  08057
Ph: (856) 235-0220; Fax: (856) 273-8617
Email: kdhesq@attorneyshartman.com
Attorneys for Plaintiff, Michael Vining

Plaintiff, Michael Vining, by way of Complaint against the Defendants, County of Burlington, Office of the Burlington County Sheriff, James H. Kostoplis, Sheriff of Burlington County, individually and in his official capacity, hereby avers:

**<u>PARTIES</u>**

1.  Plaintiff, Michael Vining ("Vining") residing at #12 Jessica Court, County of Burlington, State of New Jersey, is a sworn member of the Burlington County Sheriff's Department.

2.  Defendant, the County of Burlington (the "County") is a public entity, which duly exists and is incorporated under the laws of the State and acting under the color of State law.

3.  The County is vested with the government and management of the Burlington County Sheriff's Department (the "Department").

4.  The Department is a public agency duly organized to maintain order and security in the County Court Facilities, including to pursue those wanted on fugitive and child support warrants, assist municipal police departments in patrolling the streets and enforcing our speed laws, and provide assistance to other law enforcement agencies by working with canine units throughout the County.

5.  Defendant, James H. Kostoplis ("Kostoplis") is the Sheriff of Burlington County, who was elected in November 2022 and sworn into office on January 5, 2023; and at all

times relevant hereto acted individually and in his official capacity and under the color of State law.

## JURISDICTION

6.   This is an action alleging violations of Plaintiff's civil rights filed pursuant to 42 U.S.C. § 1983 and the First Amendment of the United States Constitution.

7.   Plaintiff participated in political expression by running for the office of Sheriff in Burlington County in 2022, which action is entitled to constitutional protection as it goes to the heart of the First Amendment.[1]

8.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

9.   Plaintiff also invokes the pendent jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to consider claims arising under State Law, as each such claim arises out of the same nucleus of operative facts as those that give rise to Plaintiff's Federal claims.

## COUNT I
## Retaliation for First Amendment Activity

10. Vining has been in law enforcement for twenty four (24) years.

11. Vining was hired by the Burlington County Sheriff's Department in 2015 as an investigator.

12. Vining has risen through the ranks of the Department, attended the Canine Academy, and became a canine officer.

---

[1] *See, e.g., Brown v. Hartlage*, 456 U.S. 45, 53 (1982) ("The candidate . . . has a First Amendment right to engage in the discussion of public issues and vigorously and tirelessly to advocate his own election . . . .") (quotation marks and citation omitted).

13. In 2017, the Department commissioned Ringo as Vining's canine.

14. Officer Ringo was trained in narcotics detection, criminal apprehension, and tracking.                    .

15. During his tenure, Officer Ringo assisted in numerous tasks, including, but not limited to: locating a missing person (disabled nonverbal child) in Moorestown; assisting the Prosecutor's Office and the United States Marshall's task force in large scale narcotics investigations; and assisting Burlington County Jail on random sweeps throughout the facility.

16. From 2015 through 2023, Vining worked in the highly regarded and successful Warrant Unit.

17. Vining was also second in command at a program called Hope One, which he has worked on since the program's inception.

18. Hope One was a program run by Michael Ditzel, Vining's friend and mentor.

19. Hope One was the second one of its kind in the State and has been recognized for its tremendous success in providing help to those with substance abuse issues, including obtaining treatment, providing Narcan and/or mental health counseling and other resources to those in need.

20. On or about April 1, 2022, Michael Ditzel filed a petition in support of his candidacy for the position of Sheriff of Burlington County.

21. Subsequently, Kostoplis entered the race for Sheriff as a Democrat, thus becoming the candidate opposing Ditzel for the office of Sheriff.

22. Vining served as Ditzel's unofficial campaign manager during the campaign, and served several functions for Ditzel, including hosting a fundraiser for Ditzel and acting as Ditzel's driver during the campaign.

23. Ditzel advised numerous officers that, should he win the election, it was his intention to make Vining his undersheriff.

24. Kostopolis ultimately prevailed and was elected Sheriff.

25. Vining went to Kostoplis's office after the election and congratulated him on his victory.

26. Vining stated to Kostoplis that he was done with politics, adding that he was going to work hard for the Kostoplis and that he was loyal to the Sheriff and the Department.

27. In December, before Kostoplis officially took office, he advertised for administrative positions in the Warrant Unit without consulting Ditzel, who was the head of the unit and who had customarily done the hiring for the unit.

28. Vining was told that Kostoplis was aware of those who had helped Ditzel in his campaign.

29. In December, before he had officially taken office, Kostoplis summoned Vining and advised that he was going to retire Vining's six-year-old Belgian Malinois, even though Officer Ringo was healthy, fit, and able to perform his duties.

30. Upon information and belief, it cost the taxpayers between $12,000.00 and $15,000.00 to train a canine.

31. Kostopolis's stated reason decommissioning Ringo was revisions to the New Jersey Attorney General Guidelines on Use of Canine for marijuana searches, crowd control, and/or other use of force.

32. The reason given was clearly pretextual because Officer Ringo was trained to detect drugs other than marijuana, trained to track articles of clothing and missing persons, and perform other useful functions.

33. Moreover, upon information and belief, Kostopolis brought in two additional canines to the Department intended to perform the same functions Ringo was trained to perform.

34. On January 5, 2023, Kostoplis was sworn in as Sheriff.

35. On January 6, 2023, Kostoplis issued a memorandum (the "January 6 Memo"), removing Vining from the Warrant Unit and assigning him to the Courts.

36. The Warrant Unit has a flexible shift, which was very valuable to Vining as his wife has a chronic illness for which she intermittently needs care.

37. Since his removal from the Warrant Unit, Vining has had to use twelve sick days, four for himself and eight others for his wife's care.

38. Kostopolis also deprived Vining of his work-assigned vehicle, specialized weapons, and all canine equipment.

39. Kostopolis also deprived Vining of his stipend for care of his canine.

40. Kostopolis also removed Vining from his role with the Hope One project.

41. Kostopolis's retaliation against Vining for his support of Kostopolis's political opponent was part of a pattern of retaliation against his opponent, Ditzel, and anyone who supported Ditzel.

## Lieutenant Michael Ditzel

42. For example, Kostopolis also removed Ditzel from the Warrant Unit and transferred him to the Human Services Building in Westampton.

43. In 2020, the newly elected Sheriff Anthony Basantis wanted to transfer Lieutenant Rodriguez to the Human Services building.

44. At that time, Kostoplis told both Rodriguez and Ditzel that he had convinced Basantis not to transfer her because it gave the obvious appearance of retaliation, as there was no need for a Lieutenant to be assigned to the Human Services Building.

45. As recently as January 2023, a Detective expressed surprise to Ditzel that Kostoplis had transferred him to the Human Services building because he and many others had heard Kostoplis say there was no need for a Lieutenant at the site, and that transferring a Lieutenant to the Human Resources building would be perceived as obvious retaliation.

46. The only member of the Sherriff's department who Kostopolis will not permit to work at the Human Services building with Ditzel is Vining, who, upon information is not permitted work at that building solely because of his association with Ditzel during the campaign.

47. Kostopolis informed Ditzel that he would report to the Administrative Undersheriff, a position that did not exist prior to January 2023.

48. Kostopolis required Ditzel to wear a uniform for the first time in eighteen years, and ordered Ditzel to report to work from 8:00 a.m. until 4:00 p.m rather than having a flexible shift he previously enjoyed.

49. Kostopolis deprived Ditzel of his work-assigned vehicle, which he had enjoyed for seventeen years.

50. Further, Kostopolis, by way of the January 6 Memo, transferred Hope One (the project Ditzel created and supervised) from Ditzel's control.

### Sergeant Michael Wyzkowski

51. There were several other officers who assisted with Ditzel's campaign.

52. One such member was Sergeant Michael Wyzkowski, who knocked on doors with Vining and attended several fundraisers to support Ditzel's candidacy.

53. Wyzkowski's support for Vining was open and well known to those in the Department.

54. On the same night Kostopolis was sworn in as Sheriff, Wyzkowski received a text message stating: "paybacks are a bitch."

55. Kostopolis also transferred Ditzel supporter Wyzkowski from Supervisor of the Civil Process Unit to the Court Bureau, and deprived Wyzkowski of his work-assigned vehicle.

56. Kostopolis assigned a person with no prior experience, and whose qualifications appear to be limited to the fact that he supported Kostopolis in the Sherriff race, to replace Wyzkowski in the Civil Process Unit.

**Officer Joseph Mrozka**

57. Officer Joseph Mrozka similarly supported Ditzel's candidacy openly and vocally, and attended fundraisers with Ditzel.

58. Mrozka's support was similarly well known within the Department.

59. Kostopolis also removed Officer Mrozka from both his assigned units, deprived Mrozka of his work-assigned vehicle, and reassigned Mrozka to the Courts Bureau.

**Officer Raymond Appalucci**

60. Officer Ray Appalucci was also a vocal supporter of Ditzel, whose support was also well known within the Department.

61. Appalucci, who conducts special investigations into threats against Judges, has a private office as he needs to conduct interviews and investigate sensitive potential criminal matters. Kostoplis removed him from the private office, giving it instead to his loyalists, leaving Appalucci to conduct confidential investigations in the "bullpen."

62. Traditionally, the Sheriff's Department has had either a Sheriff and an Undersheriff or a Sheriff and a Chief.

63. The new Sheriff has created three Undersheriff positions, along with a Chief of Staff and a Chief Warrant Officer. It is estimated that these positions will cost the taxpayers almost $600,000.00, and will be filled by Kostopolis with people supportive of his campaign or County Democratic campaigns.

64. The First Amendment protects individuals from retaliation by government officials on the basis of political affiliation.

65. Plaintiff engaged in conduct protected by the First Amendment by supporting a candidate running for political office.

66. Defendants retaliated against Plaintiff for the exercise of his First Amendment rights by:

- taking away his canine;

- taking away his work-assigned vehicle;

- removing him from his assignment at the Warrant Unit ;

- removing him from the Hope One project.

67. As a result of Defendants' actions, Plaintiff was damaged.

**WHEREFORE**, Plaintiff Michael Vining demands judgment against Defendants jointly, severally, and in the alternative for reinstatement of his contract, compensatory damages including damages for emotional distress, loss of reputation, lost wages and other personal injury, punitive damages, pre and post judgment interest, equitable remedies, and all costs of suit.

## COUNT II
### (New Jersey Civil Rights Violation)

68. Plaintiff repeats all the allegations of the First Count and incorporates the same herein as if set forth at length.

69. The New Jersey Constitution enshrines a right to free speech for all New Jersey citizens.

70. The State protects its citizens from retaliation for the exercise of the rights guaranteed them under its Constitution.

71. As described at length above, Defendants retaliated against Plaintiff for exercising his constitutionally protected speech and association; specifically, Defendants retaliated against Plaintiff for running for political office.

72. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages including, but not limited to emotional distress, embarrassment, humiliation, suffered loss of income and other benefits, injury to his reputation, and other personal injuries.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly, severally, and in the alternative, for reinstatement of his contract, compensatory damages, including damages for emotional distress, loss of reputation, personal injury, back pay, front pay, consequential damages, punitive damages, pre and post judgment interest, reasonable attorneys' fees and the cost of suit and any other damages the Court deems equitable and just.

## COUNT III
## Punitive Damages

73. Plaintiff repeats all the allegations set forth in the first two Counts and incorporates the same herein as if set forth at length.

74. The actions of Defendants were outrageous and demonstrate a pattern and practice by Defendants of interference in Plaintiff's constitutionally protected rights.

75. A defendant's willful indifference gives rise to liability for punitive damages. Defendants' acts of retaliation were performed with malicious and reckless indifference. to Plaintiff's constitutionally protected rights.

76.  Defendants' actions justify the imposition of punitive damages.

**WHEREFORE**, Plaintiff Michael Vining demands judgment against Defendants, jointly, severally, and in the alternative, for compensatory damages, including damages for emotional distress, loss of reputation, personal injury, back pay, front pay, consequential damages, punitive damages, pre and post judgment interest, reasonable attorneys' fees and the cost of suit and any other damages the Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues.

ATTORNEYS HARTMAN, CHARTERED

By:  / s/ Katherine D. Hartman
Katherine D. Hartman, Esquire

Dated:  December 7, 2023

## <u>DESIGNATION OF TRIAL COUNSEL</u>

Katherine D. Hartman, Esquire, of Attorneys Hartman, Chartered, is hereby designated as trial counsel in the within matter.

ATTORNEYS HARTMAN, CHARTERED


By: *_/s/ Katherine D. Hartman_*
        Katherine D. Hartman, Esquire

Dated: December 7, 2023